SNIDER, APPELLANT, v. RINEHART, APPELLEE.

1. NEW TRIAL, WHEN OF RIGHT.,

Any party against whom judgment is rendered in an action to recover possession of real property under chapter, 23 of the Code, may have one new trial "as of right without showing cause," upon complying with the following terms : *first*, he must, before the first day of the next succeeding term, pay all the costs recovered by such judgment ; and, *second*, he must apply to the court to vacate such judgment and grant a new trial within reasonable time.

2. MODE OF APPLICATION.

The manner of making application for a new trial in such cases may be by motion in the usual form, though not necessarily in writing.

3. TIME OF APPLICATION.

An application, made at the second term next succeeding the term at which the judgment was rendered and after a writ of possession has been applied for by the successful party, is not in time.

4. QUORUM OF SUPREME COURT.

The supreme court of this state is duly organized and competent to exercise jurisdiction as such court so long as two judges of said court are duly qualified in their office.

*Appeal from the District Court of El Paso County.*

ACTION for possession and damages.  Judgment for plaintiff.  Defendant appeals.

Mr. T. A. McMORRIS and Messrs. PATTERSON & THOMAS, for appellant.

Messrs. WELLS, McNEAL & TAYLOR, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

This was an action by Rose Rinehart, plaintiff below, to recover from the defendant Snider possession of certain real estate and damages for its detention.  The complaint contains two causes of action ; the first, which is all that need be considered on this appeal, is similar to a count in ejectment

under our former practice. See Code of Civil Procedure, chap. 23.

There were two jury trials of the cause in the district court. The first trial occurred at the November term, 1887, and resulted in favor of the defendant. Prior to the next ensuing term, March, 1888, the plaintiff paid the costs, and at said March term applied for and obtained a new trial, the first judgment being vacated in pursuance of the statute quoted below.

The second trial was had at the March term, 1888; it resulted in a verdict and judgment for plaintiff.

The next ensuing term of the court after said second trial and judgment was the November term, 1888. Prior to said November term defendant paid the costs of the second trial, but made no application to have the second judgment vacated or for a new trial either before or during said November term, 1888.

During the following March term, 1889, that is, on April 29, 1889, the plaintiff applied to the court by motion for a writ of possession of the premises based upon the second judgment; the clerk having refused to issue such writ. Afterwards at a special adjourned session of said March term held in June, 1889, defendant filed his counter-motion to vacate the judgment rendered at the March term, 1888, and for a new trial. The court denied defendant's counter-motion, and granted plaintiff's motion for a writ of possession. This action of the court is the only matter assigned for error.

The determination of the question thus presented depends upon the construction to be given to the following provision of the code:

" Sec. 272. Whenever judgment shall be rendered against either party, under the provisions of this chapter, it shall be lawful for the party against whom such judgment is rendered, his heirs or assigns, at any time before the first day of the next succeeding term, to pay all costs recovered thereby, and upon application of the party against whom the same was rendered, his heirs or assigns, the court shall vacate such

judgment and grant a new trial in such case, but neither party shall have but one new trial in any case, as of right without showing cause. And after such judgment is vacated, the cause shall stand for trial, the same as though it had never been tried."

It will be observed that any party against whom judgment is rendered in an action to recover possession of real property under chapter 23 of the code, may have one new trial "as of right without showing cause;" and the terms upon which such new trial may be had are as follows: First, such defeated party, his heirs or assigns, must before the first day of the next succeeding term pay all the costs recovered by such judgment; second, he must apply to the court to vacate such judgment and grant a new trial. The time when such costs are to be paid is certain; but the time when such application is to be made is not stated in express words; the latter period of time must, therefore, be arrived at by a reasonable construction of the statute.

It is argued by counsel for appellant that the statute is so broad and unqualified that if the defeated party shall pay the costs within the prescribed time, his right to a new trial is absolute and beyond the discretion or judgment of any court, and that he is entitled to a new trial at any time when he shall make application for it. This argument, though strongly presented, does not seem altogether sound. Such a construction, if adopted, would enable the defeated party to reopen the litigation long after his opponent might reasonably consider it at an end. It is against the policy of the law and the rights of parties, that litigation should be thus protracted.

It is further urged that a voluntary payment of the costs by the defeated party within the prescribed time must be regarded as an application for a new trial. This view is against the letter as well as the reason of the statute, which provides that there must be an application by the defeated party, as well as the payment of costs, before the court is required to vacate the judgment and grant a new trial. The

payment of costs is an obligation legally resting upon a defeated party who intends to submit to the judgment without further trial as well as upon one who intends to apply for a new trial. Hence, nothing definite is to be inferred from the voluntary payment of costs; such payment without further affirmative action cannot be considered as equivalent to an application for a new trial.

The statute does not specify either the time or the manner of making the application for a new trial; therefore, the usual practice appropriate to such proceedings may be resorted to. The vacating of a judgment and the granting of a new trial would, in the language of the code, be denominated an order; and an application for an order is a motion. Code, sec. 371. Hence, the application for a new trial may be by motion in the usual form, though we do not decide that the motion or the notice thereof must necessarily be in writing. If the defeated party, having paid the costs within the prescribed time, should within reasonable time in open court, in the presence of the opposite party or his attorney, make application to have the judgment vacated and a new trial granted, the provision of the statute would doubtless be sufficiently complied with and he would be entitled to have his application granted.

What is reasonable time within which to make application for a new trial? The statute must receive a reasonable construction—such as will promote its objects and tend to the furtherance of justice. In arriving at such construction, the language of the statute is to be considered, and also its subject-matter; and the construction given should be consistent with the language and purposes of the statute.

Ordinarily, the time within which motions for a new trial must be made is prescribed by the statute. In general, such motions must be made at the term when the verdict or judgment is rendered. Code, sec. 218; *Gibson v. Manly*, 15 Ills. 140. It is also a general principle that a defeated party desiring a new trial must be diligent in making application for it. Negligence or undue delay may defeat an application

otherwise meritorious. It is the policy of the law to secure to parties litigant the termination of their legal controversies. Hilliard on New Trials, p. 495.

While the foregoing observations apply to motions for new trials for cause, it is obvious that they have an important bearing upon the construction of the statute under consideration. It is desirable that litigation respecting titles to land should reach a termination in reasonable time, as well as other controversies, though, on account of greater value and importance of real property and the greater difficulty in settling land titles, greater indulgence is extended in the matter of granting new trials. But no unreasonable delay is to be encouraged. In cases like the present, it is manifest that the statute contemplates giving the defeated party a longer time than the term at which the verdict and judgment were rendered, in which to make his application. The statute gives him the whole of that term and the whole of the intervening vacation before the next succeeding term in which to pay the costs, and it is only upon such payment that he can base his application for a new trial as of right without showing cause. Having the whole of the last day of the vacation in which to pay the costs as a basis for his right to a new trial, an application or motion made and filed on that day would certainly be in time. It was so held by the circuit court of the United States sitting at Denver, Mr. Justice Brewer presiding. See *Keener v. U. P. Ry. Co.* 34 Fed. Rep. 871.

We are of opinion, also, that an application for a new trial made at the opening of the term next succeeding the term at which the judgment was rendered, should be held to be made in time within the language, purpose, and policy of the statute. This would seem to be a reasonable and liberal rule in favor of the defeated party. But even such a rule would not avail appellant in the present case. He allowed the term at which the judgment was rendered and also the whole succeeding vacation to pass without making application for a new trial. He also allowed the whole succeeding term, and the whole vacation succeeding such second term, to pass with-

out making application for a new trial. Thus two terms and two full vacations elapsed. Not until plaintiff had applied for a writ of possession at the third term, that is, at the second term after the judgment term, and not until an adjourned session of such second term, did appellant apply for a new trial. This was certainly too late; and it was not error to deny his application.

The judgment of the district court must be affirmed.

*Affirmed.*

## ON PETITION FOR REHEARING.

PER CURIAM : The judgment of affirmance on this appeal was rendered at a time when there was a vacancy on this bench occasioned by the resignation of Mr. Justice Helm. Counsel for appellant contend that such judgment of affirmance is illegal for want of jurisdiction in the court to render the same. Such contention is based solely upon the following provision of article 6 of the constitution:

" Sec 5. The supreme court shall consist of three judges, a majority of whom shall be necessary to form a *quorum* or pronounce a decision."

The argument of counsel is to the effect, that the supreme court is not legally constituted, and cannot transact business as a court, unless there be three judges actually in commission, though it is conceded that a majority of the three—that is, two judges concurring—may pronounce a decision.

This reasoning, though plausible, is faulty in that it leaves out of consideration certain very important words of the section above quoted. The idea is very clearly expressed not only that two judges may " pronounce a decision," but that no more than two judges are necessary to " form a quorum " of the supreme court.

The word *quorum*, now in common use, is from the Latin. It was anciently used in the commissions by which the king of Great Britain designated certain justices, " jointly and severally to keep the peace, and any two or more of them to inquire of and determine felonies and other misdemeanors,

in which number some particular justices, or one of them, are directed to be always included and no business to be done without their presence." The persons so designated as essential to the transaction of business were called "justices of the *quorum*." Hence, the term *quorum* has come to signify, "such a number of the officers or members of any body as is competent by law or constitution to transact business." 1 Blackstone, 351; Webster's and Worcester's Dictionaries.

For example, our constitution provides: "The senate shall consist of twenty-six, and the house of representatives of forty-nine, members;" and, again, "A majority of each house shall constitute a quorum, but a smaller number may adjourn from day to day and compel the attendance of absent members." Art. 5, §§ 11 and 46.

Here we have the same language, "shall consist," as in section 5 of the judiciary article under consideration. Can it for a moment be supposed that, if a vacancy should occur in the senate or in the house of representatives by the death or resignation of a member during the legislative session, the general assembly or either house thereof would no longer be legally constituted for the transaction of business? Such vacancies are of common occurrence; and yet such legislative bodies, so long as they have a *quorum* in attendance, proceed regularly with the transaction of business.

Section 5 of the schedule of the constitution provides:

"Whenever any two of the judges of the supreme court of the state, elected or appointed under the provisions of this constitution, shall have qualified in their office, the causes theretofore pending in the supreme court of the territory, and the papers, records and proceedings of said court, and the seal and other property pertaining thereto, shall pass into the *jurisdiction* and possession of the *supreme court* of the state," etc.

Here we have a contemporaneous construction of the constitution, indicating clearly that while it is declared that the supreme court shall consist of three judges, yet, that when

two judges of the supreme court have qualified in their office the *supreme court* is duly constituted and competent to exercise *jurisdiction as such court* over the causes pending therein.

The Revised Statutes of the United States contain the following provision from the act of congress of April 10, 1889, viz.:

" Sec. 673. The supreme court of the United States shall consist of a chief justice of the United States and eight associate justices, any six of whom shall constitute a quorum."

This language is identical in substance with section 5 of article 6 of our Constitution. Hence, if the construction contended for by appellants be correct, then the United States supreme court can never transact any business during a vacancy occasioned by the death or resignation of any one of the nine judges provided for by the act constituting said court. It is a matter of common information that numerous vacancies have occurred in that body during the last quarter of a century, and such vacancies have continued for months at a time, and, yet, during the period of such vacancies the court has gone on exercising its full jurisdiction in the decision of pending causes.

A vacancy is liable to occur at any time in this court. Such vacancy may continue weeks or even months, as during the present term, for the reason that the governor may not be able to induce a suitable person to accept the office " until the next general election," as provided by the constitution. The consequences might be very serious if the court were to be held practically disorganized or incapacitated from transacting business during such vacancy. Fortunately, there seems to be no good reason for arriving at such conclusion. Counsel for appellants have cited no authority sustaining the position which they have assumed. Nevertheless, in a matter so important as a challenge to the jurisdiction of this court (now that the court consists of the maximum number of judges), we have deemed it proper to consider the question of jurisdiction thus presented and ren-

der a written opinion thereon. Our conclusion is that the supreme court of this state is duly organized and competent to exercise jurisdiction as such court so long as two judges of said court are duly qualified in their office.

The other grounds upon which the petition for rehearing is urged require no additional opinion. The petition for rehearing is denied, all the justices concurring.

*Rehearing denied.*