[No. 3852.]

## DUGGAN v. McCULLOUGH.

1. TAX DEEDS—MANDAMUS.

A county treasurer has authority to issue a second tax deed, for the purpose of correcting a former defective deed, at any time before redemption, and if he refuse to do so, mandamus will lie to compel him.

2. TAX DEEDS—EVIDENCE.

The making and admitting in evidence of a second tax deed on behalf of a defendant could not prejudice plaintiff, since the tax deed being only *prima facie* evidence of the preliminary statutory conditions it might be overcome by showing that any substantial requirement was not observed.

3. TAX DEEDS—CERTIFICATES OF SALE—SECOND DEED.

Where a tax sale certificate was surrendered to the treasurer, as required by statute, and a tax deed issued and the certificate remained in the possession of the treasurer, it was not necessary to the validity of a second deed, made to correct the former, that the certificate be again presented and surrendered by the purchaser.

4. EVIDENCE—EJECTMENT—AFTER-ACQUIRED TITLE.

In an action for the possession of real property, a title acquired after the action was commenced may be set up on behalf of defendant, and if acquired after answer is filed it may be set up by supplemental answer.

5. TAX DEEDS—ASSESSMENT ROLLS—AUTHENTICATION—STATUTORY CONSTRUCTION.

Under section 3823, Mills' Ann. Stats., providing that the assessment rolls shall be authenticated by the assessor attaching a prescribed oath to the assessment book, but that a failure to subscribe the oath shall not invalidate the assessment, a tax deed is not void because the assessment roll was not authenticated by the assessor as required by statute.

6. TAX DEEDS—BOARD OF EQUALIZATION—NOTICE OF MEETING— EVIDENCE.

A tax deed is *prima facie* evidence that the ten days' notice of the meeting of the county board of equalization was published as required by statute, and as the statute does not require that proof of such publication shall be filed or recorded, the absence from the record at the time of trial of the proof of publication of notice is not proof that the notice was not published. An owner who has no grievance cannot complain that notice of the meeting of the board of equalization was not published.

7. TAX DEEDS—BOARD OF EQUALIZATION—TIME OF MEETING.

The failure of the county board of equalization to meet at the precise time fixed by statute does not render the assessment or levy, or a tax deed made under such assessment and levy invalid.

8. EVIDENCE—DELINQUENT TAX NOTICE—PAROL PROOF.

Where part of the record proof of the publication of a delinquent tax notice was lost after it had been used in the trial of a cause involving the validity of a tax deed, oral evidence was properly admitted to supply such lost record evidence on a subsequent trial.

9. TAX DEEDS—ASSESSMENTS—VALUATION.

In an action involving the validity of a tax deed the objection that the property was not assessed at its full cash value cannot be raised.

*Error to the District Court of Arapahoe County.*

MR. R. M. CRANE and MR. J. WARNER MILLS for plaintiff in error.

MR. GEORGE C. NORRIS for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

This action, for recovery of the possession of real property, was brought by the plaintiff below (plaintiff in error), as the grantee of the patentee, against the defendant below (defendant in error), the grantee in a tax deed. There have been three trials, the last one to the court without a jury, partly upon an agreed statement of facts, and in part upon oral testimony. The first trial resulted in a judgment for the plaintiff; the other two for the defendant. Unless the tax deed conveys a good title to the defendant, the plaintiff is the owner and entitled to recover.

Judgment went for the plaintiff at the first trial upon the ground that the deed introduced in evidence by the defendant, and referred to in the record as the first tax deed, was void as to the property in question because it was not included in the granting clause. As the solution of the controversy depends upon the validity of the tax deed, the questions involved are best presented by considering the various objections made thereto by counsel for plaintiff in error.

1. Soon after the first trial, the defendant, for the purpose of correcting an error in the tax deed and with a view to make the conveyance and the record speak the truth, procured from the county treasurer and had recorded a second tax deed, duly acknowledged, which in apt terms conveyed the title. Before the beginning of the second trial, by leave of court, he set up this title by way of a supplemental answer, and at both the second and third trials the second deed was introduced in evidence over the objection of the plaintiff.

Possibly the leading case asserting the right of a purchaser at a tax sale to a second tax deed is *McCready v. Sexton*, 29 Ia. 356. An earlier case is *Maxcy v. Clabaugh*, 1 Gil. (Ill.) 26. The authorities are collected at section 1413 *et seq.* of Devlin on Deeds, and the right is recognized in *Smith v. Griffin*, 14 Colo. 429.

But plaintiff contends that the execution of the second deed and its admission in evidence were prejudicial to her because she had a right to rely upon the record of the first deed which the second one contradicts. Some authorities are cited to the proposition that amendments of the record in tax proceedings at the instance of a purchaser at the sale should not be allowed to the prejudice of other parties. We do not consider these authorities applicable to the facts of this case. Section 3900, Mills' Ann. Stats. (Sess. Laws, 1885, p. 323) provides that a tax deed may issue at any time after the expiration of three years from the date of the sale and before redemption by the owner. If, through some mistake of the county treasurer, the first deed is irregular or defective, mandamus will lie to compel him to make, or he may voluntarily make, another deed correcting the mistake at any time before redemption. The plaintiff was advised at the first trial that defendant's tax deed was void, but she did not see fit to redeem before a second one issued.

Any tax deed, whether the first or a subsequent one, is invalid, if some substantial, preliminary, statutory condition is ignored, and as our statute makes a tax deed only *prima*

*facie* evidence of these preliminary conditions, the making of the second tax deed and its admission in evidence did not prejudice the plaintiff because she might overcome the presumption by showing that some substantial requirement was not observed.

As an additional objection to the validity of the second deed it is urged that the purchaser did not, at the time of its issuance, present and surrender to the treasurer the certificate of sale which the statute requires to be done. It appears that this certificate was surrendered at the time the first deed was executed, and when the second one was called for, the certificate was in the possession of the county treasurer. It would be idle to require the purchaser, when applying for a second deed, to get from the treasurer possession of the certificate theretofore surrendered, and then, a second time, hand it to that officer with a request for the issuance of a second deed. The treasurer already had the certificate, and the law does not require a useless thing to be done.

It is further said that in an action of this kind an after-acquired title will not support the action, and to this are cited *Dickinson v. Thornton*, 65 Ark. 610, and *Percifull v. Platt*, 36 Ark. 456. Those authorities say that a plaintiff in ejectment cannot, not that a defendant may not, succeed on a title acquired after the beginning of the action. It hardly needs any authority to the proposition that a defendant may set up an after-acquired title.

In Newell on Ejectment, page 250, it is said : " Any title acquired subsequent to the filing of the plea and issue joined upon, must be set up by a supplemental answer in the nature of a plea *puis darrien continuance* filed by permission of the court." And at page 654 it is said that a defendant in possession of premises may always protect himself by buying in an outstanding title. In Tyler on Ejectment, at page 468 *et seq.* and in 6 Ency. Pleading and Practice, at page 344, the same doctrine is announced. Under our practice an after-acquired title may be set up by the defendant in a supplemental answer as was done in the case at bar.

2. Another objection is that the assessment roll was not signed or officially authenticated by the county assessor. Section 3823, Mills' Ann. Stats. (Gen. Stats. 1883, sec. 2860) contains the only direction for authentication, and it provides that the assessor must take a prescribed oath and attach it to the assessment book. But the statute also expressly states that failure to subscribe the oath will not, in any manner, affect the validity of the assessment. Whatever the law may be elsewhere, this statute disposes of the objection.

3. Section 3825, Mills' Ann. Stats. (Gen. Stats. 1883, sec. 2862) requires the county clerk to give at least ten days' notice, by publication, of the meeting of the county board of equalization, at which the board shall proceed to equalize the taxes and hear complaints. Neither the records of the county clerk, nor those of the board, affirmatively show that this notice was given, and it is contended that this is fatal to the validity of the tax upon which defendant's deed rests. Our statute does not require that proof of publication shall be filed or recorded. The deed itself, by section 3902 Mills' Ann. Stats. (Gen. Stats. 1883, sec. 2932), when executed, acknowledged and recorded as therein provided, is *prima facie* evidence that this notice was given. We cannot say that the mere absence from the records, at the time of trial, of a recital which the statute nowhere requires shall there appear, is proof that the notice was not given. Especially in view of the fact, disclosed by the record before us, that a notice by the clerk in the exact form prescribed by the statute was published in a newspaper.

But it is said that this published notice recites that the board will meet to equalize taxes for the year 1880, instead of the year 1881, for the nonpayment of the taxes of which latter year the lot in controversy was sold. But we are satisfied that the notice as a whole was not misleading. And the general rule is that an owner who has no grievance cannot complain that a proper notice of the meeting of the board for the purpose of equalizing was not given; and in this case

the plaintiff, instead of objecting because of excessive taxes, asserts, as will be considered under another head, that her assessment, and consequently her tax, was too low.

4. The county board of equalization did not have the assessment roll until the entire period to equalize and hear complaints had elapsed. Section 3790, Mills' Ann. Stats. (Sess. Laws, 1889, p. 321, sec. 10) is an exceedingly liberal statute of jeofails, and under its provisions this failure of the board to meet at the precise time fixed by the statute does not render the assessment or levy invalid. *Waddingham v. Dickson,* 17 Colo. 223; *Haley v. Elliott,* 20 Colo. 379; *Breeze v. Haley,* 10 Colo. 5; s. c. 11 Colo. 351, 360.

5. It is said that the proof of publication of the delinquent tax notice was defective in that the concluding part of the record proof of publication, containing the date, signature and seal of the county treasurer to the notice was missing. Such seems to be the fact, but it abundantly appears from the oral testimony that at the two former trials this record proof of notice was complete and strictly in accordance with the statute, and that after the second trial the last sheet of the tax list as published, which contained the missing portion, had either been abstracted or was lost, and could not be found. Oral testimony, for the reception of which proper foundation was laid, was thereupon admitted, which clearly showed that the proof of publication had been made and filed as the statute requires, and this was sufficient.

6. The last objection is that the assessment of this property was at less than its full cash value, which is the statutory standard. In the first place, it may be observed that the testimony upon this question was conflicting, and the finding of the trial court is against plaintiff's contention. This sufficiently disposes of the objection. But were the fact as plaintiff alleges, this issue was not proper in this action. In *Barnett v. Jaynes,* 26 Colo. 279, it was held that the remedy of a property owner who complained that the assessment was not uniform was to apply to the assessor himself or the county board of equalization, and if he neglected

to avail himself of these remedies, he could not be heard to complain of errors in the valuation of the property after a sale has been made and a tax deed issued. The same rule, of course, would apply where the grievance is that the assessment was excessive or too low, if, indeed, a party has a right to complain because his assessment is too low. Doubt has been expressed of such right, but it is not important here to determine it. Welty on Assessments, § 130, note 6.

In a well considered case, *Blanchard v. Powers*, 42 Mich. 619, it is well said that wherever the character of the valuation in making an assessment was inquired into, it was between the property owner and the public authorities in an action or proceeding instituted to annul or vacate the tax before the rights of third persons had intervened. Such are the cases, cited by plaintiff in error, from Wisconsin : *Schettler v. City of Fort Howard*, 43 Wis. 48, and authorities therein discussed.

The foregoing disposes of all the errors assigned, and their resolution against the plaintiff in error is equivalent to a declaration that the tax deed is valid and confers a good title upon the defendant. Were it necessary, other reasons for our conclusion upon the foregoing propositions might be given, and we now refer to still other matters that would make it inequitable to disturb the judgment.

The prosecution of this action by the plaintiff is characterized by laches, through no fault of her present counsel, which would justify us in affirming the judgment without regard to the merits. Though excepted to at the time by the defendant, but not assigned here as cross-error, the ruling of the trial court in vacating the judgment rendered at the second trial and allowing the plaintiff a new trial was wrong. This order awarding a new trial was made about two years after the rendition of the judgment at the second trial, and after the expiration of more than four or five terms of court. In *Snider v. Rinehart*, 18 Colo. 18, an application for such order under a similar state of facts was held not to be made in apt time. But as the same conclusion has been reached upon

the merits of the case as would have resulted had the rule of the *Snider* case been enforced, or the consequences of plaintiff's laches been visited upon her, we have preferred to rest our decision upon the former ground, and mention the other matters, lest otherwise our action might be considered an approval of the dilatory conduct which has attended the prosecution of the case, and a recognition of the correctness of the ruling awarding a third trial to which, as we have seen, plaintiff was not entitled.

The judgment should be affirmed, and it is so ordered.

*Affirmed.*