## GIBSON v. PEKAREK et al.

Under Sess. Laws 1891, c. 14, § 121, providing that after 2 years and 60 days from issuance of a tax sale certificate, no redemption having been made, the certificate owner shall be entitled to a deed, where a tax deed issued is void, a subsequent county treasurer may execute a second deed in proper form to correct the same.

Under Sess. Laws 1891, c. 14, § 118, permitting redemption from a tax sale within two years after the sale, or at any time before conveyance by the county treasurer, by paying the treasurer for the use of the purchaser, etc, a tender for redemption must be made to the county treasurer, and a tender to the grantee of the tax sale purchaser is unavailing.

A second tax deed issued to cure a defect in the first deed was properly issued to the grantee in the first deed, though he had before the second deed quitclaimed to another.

The law in force at the time a tax deed is made governs as to the deed executed thereunder.

It is competent for the Legislature to make a tax deed conclusive evidence of all the proceedings except such as are jurisdictional.

Comp. Laws 1887, § 1639, making a tax deed conclusive of all the facts recited, and prima facie evidence of the regularity of the proceedings, does not preclude a showing that the recital of notice of the sale was untrue, or that an illegal sum was levied.

Though a subsequent treasurer is authorized to execute a tax deed to cure a defect in a former deed, the recitals in such subsequent deed can only be such as are authorized by the records in his office, and he cannot by recitals not sustained by the records conclude the owner.

A notice of tax sale described the various parcels under the following headings: Name, Description, Section, Acres, Year, Tax, Penalty, and Total. The names of delinquent persons in that township then appeared with the description of their property, etc. This was followed by Pleasant Grove township and Eagle. Then appeared "Bijou Hills 2nd Addition, name, lot, block, year, tax, penalty, and total." Following this, without any new heading, came township 101 N., of range 70 W., America township. Following this was township 101, range 71; township 102 north, of range 67 west, Wilbur township; township 102 north, of range 68 west, Highland township, and, after giving 15 persons delinquent, with description of their property, and amount due, was the property in question as follows: "L. Moore, sw 29 do do $20.90 tax, penalty $1.99 total $22.95." The sixth de-

scription above that of Moore appeared: "F. Craft, N. W. 21 160." **Held,** that the contention that there were no headings above the descriptions of the property in those townships succeeding headings in "Bijou Hills Second Addition," and that, therefore, the notice as to the property in question was fatally defective, was not sustainable, for no person could fail to understand that the property in question was the S. W. ¼ of section 29, township 102 N., of range 68 W., Highland township, and that the description could not have been intended to be a description of a lot or block.

Since the artesian well law of 1889 (Laws Dak. 1889, c. 14) did not repeal the well law of 1887 (Laws Dak. 1887, c. 7), so far as affecting prior contracts, it will be presumed that the act of the board in levying a five-tenths mill tax was legal where it does not affirmatively appear that the levy was not to carry out contracts made under the law of 1887 or the law of 1889.

Plaintiff in ejectment must recover upon the strength of his own title.

One in possession under color of title may avail himself of an outstanding title as a defense, though he does not connect himself therewith.

An after-acquired title may be set up by defendant in ejectment in a supplemental answer.

(Opinion filed, April 5, 1910.)

Appeal from Circuit Court, Brule County. Hon. FRANK B. SMITH, Judge.

Action by Charles E. Gibson against Frank Pekarek and others. From a judgment for defendants and an order denying a new trial, plaintiff appeals. Judgment modified, and, as modified, affirmed.

*W. F. Mason,* for appellant.

The first tax deed is void on its face because it does not recite that it appeared that the land had been assessed and charged on the tax book or duplicate for the year 1892, for non-payment of taxes of which year said deed recites the tax sale upon which it is based to have been made. Horswill v. Farnham, 16 S. D. 414. The three year statute of limitations does not run in favor of tax deed void on its face. Horswill v. Farnham, supra; Salmer v. Lathrop, 10 S. D. 216. A tax deed which is not in the form prescribed by law has no evidential force as to the existence of any fact therein recited or the regularity of any of the prior proceedings. Hegar v. DeGroat, 56 N. W. 150; Beggs v. Paine, 109 N. W. 322. If it appears that the 1893 sale to Smith was

void the tax deed issued pending the action could not convey title
If that sale was valid, Smith acquires by virtue thereof an estate
or interest in the premises. Clark v. Darlington, 7. S. D. 148.
The treasurer was not authorized to execute a second and cor-
rected deed, which mistated any fact regarding any proceeding
prior to its execution, such deed, if executed, would be void; or,
in other words, that the second deed is not conclusive evidence
of any fact therein recited, but may be defeated by proof of any
fact which made the sale itself invalid. Gould v. Thompson et al.,
45 Iowa, 456. A sale which is made for too much is (in the
absence of any statutory provision by which the owner might
secure payment to him of the excess in the amount for which the
sale is made) void. Burroughs v. Goff, 31 N. W. 273; Tread-
well v. Patterson, 51 Cal. 638; Boston Tunnel Co. v. McKenzie,
67 Cal. 490; Thayer v. Mayo, 34 Me. 139; Cheney v. Stevens, 97
Mass. 77; Genther v. Lewis, 24 Kan. 311; Beggs v. Paine, 109
N. W. 322. There being no sufficient notice of sale of the land in
controversy specifying the amount of taxes due thereon, the sale
and any tax deed issued thereon were void. Mather v. Darst, 13
S. D. 75. Where void levies are extended against the land along
with valid levies, no interest or penalty upon the valid levy can
be recovered. State v. Certain Lands in Redwood Co., 40 Minn.
512; Wells County v. McHenry, 7 N. D. 246.

*James Brown,* for respondent.

A quit claim deed from a purchaser at tax sale was not such
an assignment of the tax certificate as would authorize the issuing
of a tax deed to the grantee in the quitclaim deed, and an amend-
ed tax deed issued in lieu of a defective one should be issued to
the grantee in the defective tax deed, though he might have
theretofore given a quitclaim deed for the land to another. State
ex. rel White v. Winn, 19 Wis. 304; Eaton v. North, 32 Wis.
303; Duggan v. McCollough, 59 Pac. 743. The defendant could
defend by setting up a title in Smith; he could defend by setting
up title in anybody other than plaintiff. Evenson v. Webster,
5 S. D. 266; Wood v. Conrad, 21 S. D. 405. Payment or tender
for redemption must be made to the officer designated by statute,
and not to the certificate holder. Rich v. Palmer, 7 Oregon, 133.

The second tax deed when properly issued should be given the effect attaching to tax deeds under the law, at the time the sale is made. Woodman v. Clapp, 21 Wis. 350. A second tax deed is conclusive evidence of the truth of all facts therein recited, except as to matters of a jurisdictional nature, respecting which the legislature has no power to make the deed or the special statute of limitations conclusive. Roberts v. Bank, 79 N. W. 1049; Fisher v. Betts, 96 N. W. 132; 25 Am. & Eng. Ency. of Law, p. 410; 27 Am. & Eng. Ency. of Law, p. 972; Smith v. Cleveland, 17 Wis. 556.

CORSON, J. This is an appeal by the plaintiff from a judgment in favor of the defendants, and from the order denying a new trial. The action was instituted by the plaintiff to recover the possession of, and quiet title to, a quarter section of land in Brule county, of which the plaintiff claims to be the owner. The plaintiff, after alleging his ownership, alleges that the defendant Ole Carlson is treasurer of Brule county, and that "the defendants Frank Pekarek and Katherna Pekerek wrongfully claim some estate or interest in said premises adverse to this plaintiff, and the said claims of the said defendants are without any right whatever, and said defendants have no estate, right, title, or interest in or to said premises." The plaintiff then sets out various tax proceedings under which defendants claim title, and alleges the invalidity of the same. Defendant denies that plaintiff is, or has been at any time, the owner of, or entitled to the possession of, the said premises, and alleges that the defendant Frank Pekarek is now, and was at the time of the commencement of this action, the owner in fee of the premises described in the complaint; that the defendant Frank Pekarek's title to said premises is based upon a tax deed issued in 1896 for the taxes levied upon said property for the year 1892 to one J. A. Smith, who subsequently conveyed the property to him; that since the year 1893 the defendant Frank Pekarek and his grantor and the defendant Katherna Pekarek have paid or redeemed all the taxes levied and assessed on said land for each year since the year 1892, the aggregate amount of taxes so paid being $217.76, besides interest, and the costs of

taking said deed which amounts to $8.75; that the said defendant
Frank Pekarek has made permanent improvements on said land
of the reasonable value of $650. The reply of the plaintiff admits
the making and execution of an instrument purporting to be a
treasurer's tax deed in 1896, but alleges that the same was not in
the form required by law, and denies that said document was or
is a treasurer's tax deed; admits that on March 13, 1899, J. A.
Smith, the alleged former owner by quitclaim deed, conveyed the
premises to the defendant Frank Pekarek, but denies that said
Smith was the owner, or said Pekarek is now the
owner of said premises. It seems to be conceded by
the respondent that the original tax deed executed to
J. A. Smith, under which the defendants claim title, executed
in 1896, is void for the reason that the treasurer in executing said
deed did not comply with the statute. The defendant Frank Peka-
rek, however, prior to the commencement of the trial of this action,
but after the same was instituted, obtained permission from the
court to file a supplemental answer, in which it is alleged that
after the expiration of 60 days from the completed notice of
expiration of time for redemption from said tax sale alleged
in the original answer hereto, and on the 17th day of August,
1904, the treasurer of said Brule county executed and delivered
to said Smith an amended treasurer's tax deed for said land,
which deed contained all the recitals and provisions required by
law in such cases, and was duly acknowledged, and the same was
duly recorded in the office of the register of deeds of said Brule
county on August 18, 1904, and which deed was executed and
delivered for the purpose of amending said tax deed referred to
in the original answer herein, and supplying an omission in the
recitals contained in said former tax deed.

Numerous alleged errors are assigned by the appellant, and
discussed by the counsel in their respective briefs, but the first and
most important question to be considered and discussed is as to the
power of a county treasurer to execute the subsequent deed to
cure the defects conceded to exist in the former deed of said
Smith, executed on the 23d of December, 1896. The case was re-
ferred to a referee for trial, who found the facts, and stated his

conclusions of law thereon, which findings of the referee and con-
clusions of law were adopted and confirmed by the circuit court.
The court finds, among things, that one Asa Roberts was on the
29th day of October, 1891, the owner of the premises in con-
troversy; that on said date said premises were conveyed by said
Asa Roberts and wife to J. Lowell Moore, trustee, by warranty
deed; that thereafter, and on the 22d day of October, 1901, said
premises were conveyed by said Lowell Moore, trustee, and his.
wife, to the plaintiff Gibson; that on the 23d day of December,
1896, there was issued by the treasurer of said Brule county a tax
deed, which was on said day recorded in the office of the register
of deeds in and for Brule county, which deed purported to convey
said premises to J. A. Smith; that said tax deed so issued failed
to contain and recite all of the matters and things required by
statute. The referee further finds as follows: "That J. A.
Smith, named as grantee in said instrument, and his wife, there-
after and in March, 1899, made, executed, and delivered to de-
fendant Frank Pekarek a deed of conveyance of said premises,
which was on March 24, 1899, duly recorded in the office of the
register of deeds in said Brule county; that thereafter, and after
the commencement of this action, and on August 17, 1904, for the
purpose of correcting the said defects in the tax deed above
mentioned, the treasurer of said Brule county, based upon the
same tax certificate on which said former deed was issued, exe-
cuted a second tax deed to the premises in controversy, which
was attested by the county auditor of said county, and purporting
to convey said premises to J. A. Smith; that on January 16,
1905, said J. A. Smith and his wife executed and delivered to
defendant Frank Pekarek a quitclaim deed to said premises; that
said certificate of tax sale upon which deeds above mentioned are
based was surrendered by said J. A. Smith to the treasurer of
the said Brule county at the time of issuance of said first tax
deed." It will be observed from the pleadings and findings that
the plaintiff has acquired the title of the original owner of said
premises to the property; that in 1893 the said J. A. Smith pur-
chased the property at a tax sale, and that in 1896 he received
what purported to be a deed from the county treasurer upon said

purchase at the tax sale in 1893; that subsequently Smith conveyed his tax title to the defendant Frank Pekarek; that the deed executed in 1896 by the county treasurer was invalid by reason of certain defects therein; and that to cure said defects the county treasurer in 1904 assumed, and did in fact execute, a second deed to the said Smith, who some months thereafter made a second quitclaim deed of the property to the said Frank Pekarek.

The court in its conclusions of law finds that the tax deed referred to in finding no. 24, being the second deed made by the county treasurer to said J. A. Smith, is valid upon its face, and the court concludes as a matter of law that the said tax deed conveyed to J. A. Smith, the grantee therein, a valid title in fee to the land in controversy in this action; that the deed of said premises executed and delivered by said J. A. Smith to the defendant herein Frank Pekarek conveyed to said defendant a valid title in fee of the said premises, and that the plaintiff Charles Gibson had not at the time of the trial of this action, and has not now, any right, title, or interest in or to the premises or any part therof; that the defendants are entitled to judgment quieting and confirming said premises in dispute in this action in the defendant Frank Pekarek against all claims of the plaintiff, and all persons claiming under him. It will be further observed that the court bases its decision mainly, if not entirely, in favor of the defendants, upon the validity of the second deed executed by the treasurer to J. A. Smith, and the second deed from J. A. Smith to the said Frank Pekarek. It is contended by the appellant that the county treasurer of Brule county in 1904 had no authority to execute to J. A. Smith the second deed for three reasons: (1) That the county treasurer of Brule county in 1896 executed a tax deed to said Smith of the premises, and that no power existed in a subsequent treasurer of the county to issue said second deed in 1904; (2) that at the time the second tax deed was issued to J. A. Smith in 1904 no certificate of sale was surrendered and canceled as required by law; (3) that at the time the second tax deed was issued to J. A. Smith he was not the owner of the property, as he had previously conveyed all his interest therein to the defendant Frank Pekarek, and hence was not entitled to receive a deed from

the county treasurer, even assuming that the county treasurer might execute a subsequent deed to cure a defect in the former deed, as such deed in any event must be made by the treasurer to the owner of the property, or assignee of the certificate of sale.

The respondent insists that the first deed executed by the county treasurer being defective and void, in contemplation of law, no deed had been issued upon the tax certificate of purchase by the said J. A. Smith, and that in such case any subsequent county treasurer was authorized to execute a proper deed to the same party in whose favor the original deed was executed, and that, the county treasurer having the certificate of sale in his possession as such county treasurer, it would be an idle ceremony for such purchaser to procure the certificate of sale from the county treasurer so canceled, and redeliver it to him as a foundation for the second deed. We are of the opinion that the respondent is right in his contention, and that after the period of 2 years and 60 days, and until the property has been redeemed, the treasurer is authorized to make a good and sufficient deed vesting the legal title in the purchaser at the tax sale, or his assignee who presents a certificate of purchase duly assigned and acknowledged as provided by section 109 of chapter 14, before referred to (Laws of 1891, p. 65). The appellant relies upon the case of Thompson v. Merriam, 15 Neb. 498, 20 N. W. 24, in which the Supreme Court of Nebraska, held that the officer who had executed the first deed was not authorized to executed a second deed. That decision, however, seems to be in conflict with the great weight of authority. In the early case of Maxcy v. Clabaugh, 1 Gilman, 26, decided by the Supreme Court of Illinois in 1844, that court held, as appears by the headnote, that; "A deed made by the successor of the clerk of the county commissioners' court to correct a mistake in a conveyance by his predecessor, which set forth that the records and papers on file in his office showed the mistake; and that the subsequent deed was made for the purpose of correcting such error, was held properly admissible in evidence. Such deed, however, is only prima facie evidence of the truth of the correction, and is liable to be rebutted by the evidence on file, if untrue." And the court in its opinion says:

"It is manifestly the duty of the clerk in such a case to execute and deliver a good and perfect deed to the purchaser for the land purchased. If he fails, or neglests, to perform the duty, he can be compelled to do so by a writ of mandamus. The successor in this case, being in possession of the same files, and thus having the same means to make the correction which his predecessor had, may be likewise compelled by writ of mandamus to make a similar correction. It seems to us that what a court will compel an officer to do by virtue of a writ of mandamus he may be permitted to do voluntarily." The law as thus stated has been approved by the Supreme Court of Wisconsin in State ex. rel. White v. Winn, 19 Wis. 304, 88 Am. Dec. 689, and Eaton v. North, 32 Wis. 303, and also in Iowa in McCready v. Sexton, 29 Iowa, 356, 4 Am. Rep. 214, and that court in a very elaborate and exhaustive opinion discusses this subject under its fifth proposition, and says: "The question then arises: Can the treasurer make a second deed, correct in fact and regular in form, having made an imperfect or informal one which did not pass the title?" And the court, after discussing the case of Maxcy v. Clabaugh, supra, decided by the Supreme Court of Illinois, and referring to the case of White v. Winn, 19 Wis. 304, 88 Am. Dec. 689, and quoting from that court, further says: "Any act of the treasurer which comes short of conveying the title (the purchaser having the right thereto), although he may have intended to convey it, does not discharge his duty to convey, and cannot, therefore, exhaust his power, for, having the power to convey, that power must continue until he does convey. If he should make a deed void on its face, and hence no deed, or make a deed to the wrong person, or of the wrong parcel of land, such acts would not exhaust his power to make a valid deed to the right person for the right piece of land, for, having the power to convey the land sold to the purchaser, he can only exhaust it by the doing of that particular thing. The right of the purchaser to be clothed with the legal title is clear and certain by the express terms of the statute, and the power of the treasurer to convey that title to him is also certain from the same statute, and that this power is a continuing one until exercised, or barred by limita-

tion, is well settled, and, indeed, is undisputed. Blackwell on Tax Titles (2d Ed.) p. 372, and authorities cited. Now, this right of the purchaser is not satisfied or fulfilled until he is clothed with the legal title; nor is the duty of the treasurer performed, or his power to convey exhausted until he does clothe the purchaser with the legal title. He may do any number of acts tending to convey, or make innumerable attempts to convey, but, until he does convey the legal title, he has not performed his duty, nor exhausted his power, nor satisfied the right of the purchaser. The proposition is too plain to admit of doubt, and too axiomatic to allow of demonstration."

In the late case of Duggan v. McCullough, 27 Colo. 43, 59 Pac. 743, decided in 1899, the Supreme Court of Colorado held as appears by the headnote that under Mills' Ann. St. § 3900, providing that a tax deed will issue any time after the expiration of three years, and before redemption, the county treasurer has authority to issue a second tax deed when it appears that the first contained an insufficient description of the property. And the court in its opinion cites with approval the case of Maxcy v. John Clabaugh, 1 Gilman, 26, and McCready v. Sexton, 29 Iowa, 356, 4 Am. Rep. 214, and says: "Sec. 3900, Mills' Ann. St. (Sess. Laws 1885, p. 323), provides that a tax deed may issue at any time after the expiration of three years from the date of the sale, and before redemption by the owner. If, through some mistake of the county treasurer, the first deed is irregular or defective, mandamus will lie to compel him to make, or he may voluntarily make, another deed correcting the mistake at any time before redemption. * * * It would be idle to require the purchaser when applying for a second deed to get from the treasurer possession of the certificate theretofore surrendered, and then, a second time, hand it to that officer, with a request for the issuance of a second deed. The treasurer already had the certificate, and the law does not require a useless thing to be done." Section 121 in force at the time the sale of the property in controversy was made for the taxes of 1892 provides that at the expiration of 2 years and 60 days from the time of the issuing of the certicate, no redemption having been made, the owner of the tax

certificate is entitled to a deed of the property which shall vest in him the absolute fee-simple title to the same. Until such a deed therefore has been executed, the treasurer is not only authorizd, but required, and, as we have seen, may be compelled by mandamus, to issue to the owner of the tax certificate a good and valid deed. We are of the opinion, therefore, that in the case at bar the court was clearly right in holding that the second deed was admissible, and that it should be construed as having the same effect as though executed at the time of the sale, and that it should be governed by the law then in force.

It is further contended by the appellant that, before the execution of the second deed, he redeemed the premises in controversy from sale by tendering to Pekarek, the purchaser of the premises from Smith, the amount of the taxes for which the property was sold, and all subsequent taxes, and that, therefore, the treasurer was not authorized to issue the second deed, but in our opinion this contention is untenable for the reason that the tender made to Pekarek was not such a tender as to constitute a redemption of the land from the sale; the only tender to be available to the appellant being a tender to the county treasurer. Section 118 of the Laws of 1891 provides as follows: "The owner or occupant of any land sold for taxes, or any other person may redeem the same at any time within two years after the date of such sale, or at any time before the execution of a deed of conveyance thereof by the county treasurer, by paying the treasurer for the use of the purchaser,  *   *   *   the sum mentioned in the certificate, and interest thereon at the rate at which the land was sold, from the date of purchase, together with all other taxes subsequently paid, whether for any year or years previous or subsequent to said sale, and interest thereon at the same rate from the date of such payment, and the treasurer shall enter a memorandum of the redemption in the list of sales, and give a receipt therefor to the person redeeming the same, and file a duplicate of the same with the county auditor as in other cases, and hold the money paid to the order of the purchaser, his agent or attorney." It will thus be seen that the only tender for re-

demption authorized by the statute is a redemption made to the county treasurer. Rich v. Palmer, 7 Or. 133.

It is disclosed by the record that the second deed in this case was issued to Smith, the original grantee in the first tax deed, and it is contended by the appellant, that Smith having previously conveyed his interest in the property to the defendant Pekarek, the treasurer had no authority to issue a deed to him, but this contention does not seem to be supported by the authorities. Smith having previously presented the certificate of purchase to the treasurer, and the same having been filed with the county auditor as provided by law without any assignment being made thereon by said Smith and acknowledged in the manner provided by section 109, c. 14, Laws 1891, he was the only person to whom the deed could be properly executed. In State ex rel. White v. Winn, 19 Wis. 323, 88 Am. Dec. 689, the Supreme Court of Wisconsin held, as appears by the headnote: "A quitclaim deed from the purchaser of land sold at a tax sale is not such an assignment of the certificate of purchase as to authorize the clerk to issue the deed from the county to the grantee in such quitclaim deed." And this case was followed in the case of Lain v. Shepardson, 23 Wis. 324, and also in Eaton v. North, 32 Wis. 303. In the latter case the Supreme Court of Wisconsin says: "It is claimed in support of the demurrer that the last tax deed should have been issued to the plaintiff instead of Eastman; it appearing by the averments in the complaint that Eastman had no interest in the premises conveyed by it when the same was issued to him. In a similar case decided in 1865 this court held that the second deed could not properly be issued to a person holding a quitclaim deed of the premises from the assignee of the tax sale certificate, but must be issued to the latter." State ex rel. White v. Winn, supra. It is disclosed by the record in the case at bar that subsequently to the execution of the second deed in August, 1904, to Smith, he made a second quitclaim deed of the property to the said Pekarek, thereby vesting the title conveyed to him by the second tax deed to the said Pekarek. In our opinion, therefore, the second tax deed was properly issued to the said Smith, and not to Pekarek, as so far as the treasurer's record discloses the

said Smith remained the owner of the certificate of the sale previously surrendered on the issuing of the first tax deed.

It is contended by the respondent that the second tax deed was "conclusive evidence of the facts therein recited, and prima facie evidence of the regularity of all the proceedings from the valuation of the land by the assessor up to the execution of the deed," as section 1639 of the Compiled Laws was not repealed by the provisions of chapter 14 of the Laws of 1891, and as it is not in conflict with any of the provisions of that chapter, and it seems to be uniformly held that the law in force at the time the sale is made is to govern as to the deed executed under the law. McCready v. Sexton, supra; Eaton v. North, supra; State ex rel. White v. Winn, supra. Undoubtedly it was competent for the Legislature to provide that the deed should be conclusive evidence of all the proceedings except such as were jurisdictional. Roberts v. Bank, 8 N. D. 504, 79 N. W. 1049; 27 Am. Eng. Ency of Law, 972; Fisher v. Betts, 12 N. D. 197, 96 N. W. 132; Smith v. Cleveland, 17 Wis. 556; 25 Am. & Eng. Ency. of Law (1st Ed.) 410, and notes; Callanan v. Hurley, 93 U. S. 387, 23 L. Ed. 931; McCready v. Sexton, supra. It is recited in the deed that: "Said J. A. Smith did on the 6th day of November, 1893, purchase at public auction at the treasurer's office in the court house in the city of Chamberlain, in said Brule county, the tracts, parcels or lots of land lastly in this indenture described and which lots were sold to said J. A. Smith separately, for sums aggregating three hundred and sixty-one dollars and fourteen cents, * * * and it appearing that the said J. A. Smith is the legal owner of said certificates of purchase, and the time fixed by law for redeeming the land therein described having now expired, and the same not having been redeemed as provided by law, and the said J. A. Smith having demanded a deed for the tracts of land mentioned in said certificates; and it appearing that said lands were legally liable for taxation and had been duly assessed and properly charged on the tax book or duplicate for the year 1892, and that said lands had been legally advertised for sale for taxes and were sold on the 6th day of November, 1893," etc. It will be observed that it is recited in the deed that no re-

demption of the land had been made, and that said lands were legally liable for taxation, had been duly assessed and properly charged on the tax books or duplicate for the year 1892, and said lands had been legally advertised for sale for taxes and were sold on the 6th day of November, 1893.

It is contended by the respondent that the deed is conclusive evidence that the lands had been legally advertised for sale for taxes. On the other hand, it is contended by the appellant that such a recital in the deed does not conclude the plaintiff, as such a law would be unconstitutional, and that the plaintiff still retains the right to show on the trial that no legal notice had been given of the intended sale of the property for the taxes of 1892. We are inclined to agree with the appellant in his contention. It is true that section 1639 of the Compiled Laws of 1887, under which the deed in this case was executed, provides that: "Such deed shall be executed by the county treasurer * * *, and such deed shall be conclusive evidence of the truth of all the facts therein recited, and prima facie evidence of the regularity of all the proceedings from the valuation of the land by the assessor up to the execution of the deed." Of course, such a deed could not be made conclusive of the jurisdictional facts upon which the tax proceedings were based, and as to the extent it might be held conclusive as curing the irregularities not jurisdictional it is not necessary now to decide, as in our view of the case the second deed executed by the county treasurer could only be valid and binding so far as its recitals were sustained by the records in the county treasurer's office, and hence it was competent for the appellant to show that the recitals in the deed that the giving of notice of the sale of the property was not true, and to show that an illegal sum was levied upon the property. While a subsequent treasurer is authorized to execute a subsequent deed to cure the defect or omissions in a former deed, the recitals in such subsequent deed can only be such as are authorized by the records remaining in his office. He cannot, by making recitals not sustained by the records in his office, conclude the original owner, and thereby prevent such owner from

showing the invalidity of the proceedings and the consequent in-
validity of the deed.

In McCready v. Sexton, 29 Iowa, 356, 4 Am. Rep. 214, the
learned Supreme Court of Iowa, on page 384 of 29 Iowa (4 Am.
Rep. 214), says: "All that has been said upon this question of
the right of a purchaser to have, and the duty of the treasurer
to make, a second or corrected deed, has been grounded upon
the idea that the proceedings prior to the deed have been such
as to entitle the purchaser to demand, or authorize the treasurer
to make, a deed conveying the title. If there have been such
acts or omissions as, under the statute, would defeat the right
of the purchaser to have, and the power of the treasurer to con-
vey, the legal title, then, of course, neither the first nor the second
and corrected deed can be legally or properly made; for, in every
instance, the power of the treasurer to make a deed depends upon
the validity of the prior essential steps or proceedings, and his
power to make a second and corrected deed must rest upon the
fact of such validity, and that the corrections as made fairly and
legitimately appear from the records themselves, or are properly
deducible therefrom, and are not facts in pais merely, or resting
alone in the memory of the treasurer, and certainly so, when
such facts should regularly and legally be made of record. And,
since we hold that the tax deed is not in any event conclusive
evidence of the facts material and essential to its validity
the second or corrected deed cannot in any case operate to the
prejudice of the owner or any other person. If the treasurer
recites or states material matters in his second deed which are
not true, the door is open for any adverse claimant to show them
to be unfounded, and thereby defeat the title claimed under it. If
they do conform to the truth of the facts, then the former owner
is not prejudiced. * * * The right to rectify any error in any
assumed corrected deed also exists, and is grounded upon the
same basis as that whereon the original right itself rests." In
Mather v. Darst et al., 13 S. D. 75, 82 N. W. 407, this court,
in speaking of the notice for the sale of property, uses the fol-
lowing language: "It is held in nearly all, if not all, the states
that the giving of notice in the form and manner prescribed by

the statute is an essential jurisdictional fact, that the omission of notice is not a mere irregularity, but a vital defect, and that the validity of all the future proceedings depends upon a substantial, if not literal, compliance with the law in this regard. Black, Tax Titles, § 205." The object of a second or subsequent tax deed is to vest the legal title in the grantee under the tax deed, and when the recitals therein are sufficient, and are sustained by the records in the treasurer's office, such legal title is transferred to the purchaser at the tax sale. It being competent, therefore, for the appellant to show that certain recitals in the tax deed were not sustained by the record, we will proceed to examine the irregularities claimed to exist on the part of the appellant in the tax proceedings, and the recitals which it is claimed are not sustained by the record in the treasurer's office.

It is contended by the appellant that there was no valid notice given of the sale of the property for the taxes of 1892, and that there was included in the levy a sum in excess of the amount allowed by law. It is disclosed by the record that a notice was given describing the lands to be sold in the usual form. The various parcels of land were described under the following headings: Name, Description, Section, Acres, Year, Tax, Penalty, and Total. The names of delinquent parties in that township then appears in the notice with the description of their property, amounts, etc. This is followed by the township of Pleasont Grove, and Eagle township. Then appears the following: "Bijou Hills 2nd Addition (with the heading): Name, Lot, Block, Year, Tax, Penalty, and Total." Following this, without any new heading, comes township 101 north, of range 70 west 5th P. M., American township. Following this is township 101, range 71; township 102 north, of range 67 west 5th P. M., Wilbur township; township 102 north, of range 68 west 5th P. M., Highland township, and, after giving the names of 15 parties delinquent, with the description of their property, and amount due from each, is added the property in controversy in this action, as follows: "L. Moore, sw 29 do do $20.96 tax, penalty $1.99, total $22.95." Following this last description is the usual notice that the property would be sold on the first Monday in November, 1893, at the usual hour, and

signed by said L. S. House, treasurer Brule county, state of South Dakota. It is claimed by the appellant that there are no headings above the descriptions of the property in these townships succeeding headings in the "Bijou Hills Second Addition,'' and therefore that the notice in so far as it affected the property in controversy was fatally defective. We cannot agree with counsel in this contention. We think no person reading the notice would be misled or fail to understand that the tract of land in controversy had been assessed to L. Moore; that it was the S. W. ¼ of section 29, township 102 N., of range 68 W., 5th P. M., and was in Highland township; and that the description could· not have possibly been intended to be descriptions of lots or blocks, as the sixth description of property above that of L. Moore appears to be as follows: "F. Craft, N. W. 21 160." The "N W." was certainly inappropriate for a lot, and the "160" must necessarily refer to acres and the ditto marks, therefore, follow-, ing the "160," would clearly indicate that it was a quarter section assessed, and not a town lot. We are of the opinion, therefore, that this notice of sale was clearly sufficient, and that the recitals in the second tax deed, and that legal notice had been given, was fully sustained by the records of the office.

It is further contended by the appellant that certain sums were included in the taxes levied upon the premises in controversy in excess of the true amounts for which the same were liable, viz., that there was included for artesian wells the sum of about $1, which was not authorized by law. We are of the opinion that this contention is untenable, as the law of 1889 provides for the levying of a county tax for the sinking of artesian wells, and the amount included in the tax levy of five-tenths mills on the dollar for artesian well purposes is clearly authorized by the statute.

It is further contended by the appellant that the tax deed in this case was void for the reason that about $1 of the amount included as an artesian well tax was illegally included in the amount levied, and he contends that the artesian well law of 1887 (Laws Dak. 1887, c. 7) was repealed and the artesian well law of 1889 (Laws Dak. 1889, c. 14) was declared unconstitutional,

but this contention is untenable for the reason that the artesian well law of 1889 was not declared unconstitutional as a whole, but only subdivision 3 of section 15 was so declared to be unconstitutional. And the act of 1889 did not repeal the act of 1887 so far as it affected prior contracts made under that law, and in the repealing clause it is specifically provided: "That all proceedings heretofore had, and all contracts made under the provisions of existing laws on the subject of artesian wells are hereby declared to be valid and may be continued and completed under the provisions of this act." It does not affirmatively appear that the levy of five-tenths of a mill was not for the purpose of carrying out the provisions of contracts made under the provisions of the law of 1887, or valid contracts made under the law of 1889, and hence this court will presume that the acts of the board in levying this tax were legal and proper.

It is further contended by the appellant that the defendants in their supplemental answer did not set up title in themselves under Smith's second quitclaim deed made subsequently to the execution of the second tax deed, and therefore they had shown no defense to plaintiff's action, but this contention is untenable, for the reason that the plaintiff must recover upon the strength of his own title, and that it is competent for the defendants in order to defeat the plaintiff's right of recovery to show an outstanding title, even in a third party, as such an outstanding title, disproves plaintiff's right to recover as against the defendants who are in possession of the premises. 15 Cyc. 65; Duggan v. McCullough, 27 Colo. 43, 59 Pac. 743; Guilmartin v. Wood, 76 Ala. 204; Trenough v. Gordon, 63 Cal. 379. The law applicable to such a case is thus stated under the head of Ejectment in 15 Cyc., supra. "One who is in possession under color of title or right may avail himself of an outstanding title as a defense, although he does not connect himself therewith."

It is now contended by the appellant in this court that the second deed from Smith to the defendant Pekarek was made subsequent to the commencement of the action, and that there is no allegation in the supplemental answer that the title had been transferred by Smith to the defendant Pekarek. There would

have been force in this objection if it had been made in the court below, but it is disclosed by the record that no such objection was taken. The record is as follows: "Defendant offers in evidence Exhibit 4, being deed from J. A. Smith to Frank Pekarek dated January 16, 1905, together with indorsement of the recording of the same. Plaintiff objects to Exhibit 4 as irelevant to any of the issues in this case and immaterial. Objection overruled, to which ruling plaintiff duly excepts." Clearly neither of these objections was tenable. The deed was both relevant and material, and, no objection being made to its introduction in evidence on the ground that it had not been pleaded in the defendants' supplemental answer, the referee was clearly right in admitting it in evidence. In the case of Duggan v. McCullough, supra, the Supreme Court of Colorado in discussing a similar question says: "It is further said that in an action of this kind an after-acquired title will not support the action. * * * These authorities say that a plaintiff in ejectment cannot, not that a defendant may not, succeed on a title acquired after the beginning of the action. It hardly needs any authority to the proposition that a defendant may set up an after-acquired title. In Newell, Ej. p. 250, it is said: 'Any title acquired subsequent to the filing of the plea, and issue joined upon, must be set up by a supplemental answer.' * * * And at page 654 it is said that a defendant in possession of premises may always protect himself by buying in an outstanding title. In Tyler, Ej. at page 468 et seq., and in 6 Enc. Pl. & Prac., at page 344, the same doctrine is announced. Under our practice an after-acquired title may be set up by the defendant in a supplemental answer, as was done in the case at bar." Had the objection been made in the court below that the deed Ehibit 4 was inadmissible for the reason that it had not been pleaded in the supplemental answer, undoubtedly the court, upon motion, would have allowed the defendants to amend their answer by making the necessary allegations, or by interposing an amended supplemental answer, but, as before stated, no objection being made to the admission of the second deed from Smith to Pekarek on the ground that it had not been pleaded, the deed may be regarded as having been ad-

mitted in effect without objection. The second tax deed executed to Smith by the treasurer being valid on its face, and Smith having conveyed his title to the defendant Pekarek, the legal title became vested in him, and plaintiff failed, therefore, to establish his right to recover the premises in this action.

It is further contended, however, that the legal title was in the plaintiff from the time he purchased the same from the original owner in 1901 until the second tax deed was executed in August, 1904, and that he, therefore, was entitled to the rents and profits of the premises during that time, amounting as found by the referee to $195, and that in any view of the case, therefore, he is entitled to a judgment for that sum, together with the costs of this action. We are inclined to take the view that the appellant is right in this contention. Conceding that the first tax deed was invalid upon its face, no title was conveyed by it to Smith or by Smith to the defendant Pekarek, and hence the legal title passed to the plaintiff from his grantor in 1901. This legal title remained in the plaintiff until the execution of the second tax deed which was made to cure the defects in the original or first tax deed, and was conveyed by Smith to Pekarek. The plaintiff, having shown himself to be the owner during that time, was clearly entitled to the rents and profits as before stated, and the judgment of the court below should have been in favor of the appellant for the $195 so found to be the value of the rents and profits during the time he held the legal title.

We are of the opinion that the judgment of the court below should be modified by awarding the sum of $195 to the plaintiff, together with the costs of this action, and the court below is directed to modify the judgment accordingly, and the same, as modified, is affirmed.