# Broughton *et al. versus* Journeay.

1. The notice which the county treasurer is required to give to the owner of *seated* lands sold for taxes under the Act of April 29th 1844, should be precise and full ; unofficial and unauthorized notice is no notice.

2. Although *written* notice may not be essential, the evidence of its service should be preserved in the archives of the treasurer's office, as a muniment of title.

3. Therefore, where the witnesses differed as to the fact of notice, and the treasurer could not fix the time within less than three months : *Held*, the proof was insufficient to go to the jury.

4. The discovery by the owner, in the treasurer's office, of the sale of his land for taxes, is not the formal official notice required by law.

5. The payment of taxes, interest, and costs by the owner within a year from notice of the sale in order to redeem seated lands sold for taxes under the Act of 1844, should be made to the county treasurer ; but a tender to the purchaser in due time would be a good redemption.

[Broughton *et al.* *v.* Journeay.]

ERROR to the Court of Common Pleas of *Crawford county.*

This was an action of ejectment for 200 acres of land, brought by Journeay against Broughton and Davis. The land had been owned by Webb, and afterwards by Keys, and had been occupied as a farm for many years, but in 1857 and 1858 was not occupied. During those years it was assessed for state and county tax as seated in the name of Webb. The owners having neglected to pay the taxes, and the collector not finding sufficient property on the land to pay them, it was returned to the commissioners under the 41st section of Act of April 29th 1844. It was also assessed in the name of Webb for school and road taxes for 1858, and in the name of Keys for school and road taxes for 1859: under these latter two assessments it was placed on the unseated list.

On 11th June 1860 it was sold by Smull, the treasurer, for state and county taxes, to Davis, plaintiff in error: on the same day it was sold as unseated to Davis for school and road taxes of 1858, and on same day it was sold as unseated for school and road taxes of 1859, to Scott. Journeay, defendant in error, afterwards bought from Scott, who assigned the deed to him May 10th 1861. Whilst Keys owned the land, on December 22d 1857, he mortgaged it to A. Journeay & Co. A *sci. fa. sur mortgage* was issued to February Term 1860, and it was sold under the subsequent *levari* and bought by A. B. Richmond, August 1860, for the mortgagees.

In the summer of 1863, Journeay came to the office of the county treasurer to examine about the condition of the land as to taxes. Smith, then treasurer, testified that he showed Journeay from the record where it had been sold to Davis for taxes by Mr. Smull, the former treasurer. Mr. Richmond, the attorney of Journeay, testified that he was with him at the treasurer's office at the time spoken of by Smith; that no deed was found but that to Scott, and that nothing was said about a sale to Davis. Mr. Richmond, having learned that Davis had a tenant on the land, went to see Davis, and was told by him that he had bought the land for taxes. Between July 10th and 15th 1863, Judge Church, as attorney for Journeay, tendered to Davis $41, the amount of tax, interest, and costs, which Davis declined to receive; and the money was brought into court.

This ejectment issued August 14th 1863.

At the trial the defendant submitted to the court the following points:—

1. The court is requested to charge the jury that the title of defendant under the treasurer's deed or sale of the land as seated for the taxes of 1857 and 1858, is not affected by the sale of the land to W. R. Scott for taxes of 1859.

2. That if the jury believe the evidence of Jesse Smith, trea-

[Broughton *et al. v.* Journeay.]

surer, there was actual notice to Journeay of the sale to Davis, and defendant is entitled to a verdict in his favour.

3. That nothing proven to have been said by George L. Smull and Jesse Smith, treasurer, can impeach the title of defendant.

The court (Campbell, P. J.) answered these points in the affirmative, saying: " As to the second point, if the jury find the notice to be sufficient, the defendant is entitled to a verdict, unless a tender were made within a year from the date."

They further charged :—" In regard to notice, it is principally a matter of fact, but the jury must be satisfied that the notice was given to the plaintiff by the treasurer in his official capacity. Was that what Mr. Smith did, or was it merely a casual exhibition of the books in search for the situation of the land at that time ? If it was not an official act the notice amounts to nothing. Then it is for the jury to say whether Mr. Smith is mistaken and whether the facts are as testified to by Mr. Richmond.

" Mr. Smith states that he gave notice to the plaintiff in the summer of 1863, or not earlier than that. Judge Church testifies that as early as the 15th of July that year he tendered Mr. Davis, the defendant, $41, sufficient to cover taxes, costs, and interest. If these dates are correct, the time for redemption had not expired and the defendant ought to have received it. He states the tender was made in legal tender notes, and the money was brought into court. The defendant assigned no reason for refusing the tender, and if it was made in time, whether the notice was in conformity with the Act of Assembly or not, if not given at an earlier date than stated in the testimony of Mr. Smith, and the tender made as stated by Judge Church, we think it would operate as a redemption, and the defendant could not resist the plaintiff's title."

The verdict was for the plaintiff.

To the answer to the second point, and also to the charge, the defendant excepted, and in this court assigned errors as follows :—

" The court erred in answer to defendant's second point.

" Also in charging the jury as follows :—

" ' In regard to the notice, it is principally a matter of fact, but the jury must be satisfied that the notice was given to the plaintiff by the treasurer in his official capacity. Was that what Mr. Smith did, or was it a casual exhibition of the books in search for the situation of the land at that time ? If it was not an official act the notice amounts to nothing.'

" That if the tender was made in time, ' as stated by Judge Church, we think it would operate as a redemption and the defendant could not resist the plaintiff's title.' "

*Finney & Douglass,* for plaintiff in error, admitting that the Act of April 29th 1844 required actual notice, argued that calling at the treasurer's office, as to taxes on his land, and being shown by

1 P. F. SMITH—3

[Broughton *et al. v.* Journeay.]

the treasurer from his books, that the land has been sold, is actual and official notice, especially as the owner himself sought the information from the treasurer ; that when he derives notice from the proper source, the *manner* of obtaining it is not essential.

They further argued, that tender to the purchaser at treasurer's sale is no redemption ; there being no privity of contract between the owner and purchaser, the purchaser is not bound to know the amount of taxes, costs and interest; nor that the person making the tender is the real owner.   The redemption should be made to the treasurer, that the purchaser may be relieved from his surplus bond.   The receipt from the treasurer to the owner is the written evidence of redemption prescribed by law: Halsey *v.* Blood, 5 Casey 319.

*Pearson Church*, for defendant in error.—The conflict of testimony·between Richmond and Smith required the question of notice to be left to the jury.

If Smith's testimony were correct, the indefiniteness as to the time would render it uncertain whether the redemption was within a year of the notice, and such uncertainty would prevent the quieting of titles, and lead to litigation.

There must be actual notice from the treasurer.   Notice should not rest on parol testimony.   Especially the official act of a public officer : Arthurs *v.* Smathers, 2 Wright 40.

The Act of 1815 relating to sales of unseated lands, and that of 1844 relating to sales of seated lands, differ in that the one requires payment of taxes with *a penalty,—to the county treasurer.*   The other neither requires payment to treasurer nor imposes a penalty. The taxes, &c., are as an ordinary debt, and to be paid to the purchaser, to whom they are due.

The tender, refusal by purchaser, and bringing the money into court, is equivalent to its receipt by the purchaser.

The opinion of the court was delivered, October 26th 1865, by WOODWARD, C. J.—Seated lands may be sold for taxes, when personal property is not found upon them, in the same manner as unseated lands ; but the owner shall have the right to redeem at any time within a year after receiving " actual notice from the treasurer of the county where such lands lie that they have been sold ;" and the mode of redemption is by " paying the amount of taxes and costs due thereon, with interest from the time when said taxes fall due :" Act of 29th April 1844, § 41, Purd. 954.

As this is a summary mode of divesting an owner's title, and there is no curative provision for laches as in the Act of 1815, relating to sales of unseated lands, it is obviously necessary that the notice of the sale which the treasurer is required to give should be precise and full.   In Arthurs *v.* Smathers, 2 Wright

43, it was said that unofficial and unauthorized notice is no notice within the statute. It must, then, be an official act by the treasurer, the evidence whereof should remain in his office. I do not say it must be written notice, though, to exclude doubt and such a conflict of evidence as we have upon this record, it would be well if written notice were required. But whether written or oral, the notice should be distinct and full, and the evidence of its service, which becomes a muniment of title, should be preserved in the archives of the treasurer's office.

Now what have we here in the nature of notice? The tract of land in question, having been assessed with certain taxes in the seated list, and with other taxes in the unseated, in the name of G. B. Webb, was sold on the 11th June 1860 by the treasurer to A. S. Davis, and a deed made therefor. On the same day, it was sold by the treasurer to W. R. Scott for taxes assessed against it in the name of Henry Keys, who, like Webb, had been a former owner.

In 1857 Keys had mortgaged the tract to A. Journeay & Co., and in 1860 this mortgage was closed, and A. B. Richmond bid in the land for Journeay & Co., a New York firm, and in 1862 conveyed it to Albert Journeay, the plaintiff below and defendant in error. He brought this ejectment against the owners of the Davis title, and the only proof of notice of the tax sale was by Jesse Smith, the treasurer for 1862–3, who swore that Journeay called at his office in May, June, or July, 1863, to see about this land. " I hunted up the record," says the witness, " and showed. him where it had been sold, during Mr. Smull's term for taxes, to Mr. Davis, the defendant in this suit."

A. B. Richmond, on the other hand, swore that he went with Journeay to the treasurer's office on that occasion and found the deed to Scott, and found no other. " Smith told Journeay in my presence that if we satisfied Scott, that was all there was against the land; Smith said nothing about the Davis sale; I am positively certain of this." Journeay subsequently obtained a deed from Scott for his title.

The Davis title depended essentially upon this fact of notice, and this contradictory evidence was all the proof that was submitted in support of it. We are clearly of opinion that it was insufficient. Journeay going to the office to make investigations for himself, even if he discovered the sale to Davis, was not in receipt of that formal and official notice which it was the treasurer's duty to communicate to him. And what proof of an official act can parol testimony that is so contradicted be regarded? When titles depend upon official acts of the first importance, better proof must be provided than this record furnishes, and the public officer who disables a party from furnishing better comes far short of his duty.

[Broughton *et al. v.* Journeay.]

But even if we were to treat that inspection of the treasurer's books by Journeay as the statutory notice required, the land was redeemed in the summer of 1863. Judge Church swore that between the 10th and 15th of July 1863 he tendered to Mr. Davis $41 in legal-tender notes, the amount of tax, costs, and interest. This was the same summer as the notice that Smith proves, and was a valid redemption of the tract, if the tender to Davis, the purchaser, instead of the treasurer, was sufficient. The statute does not prescribe to whom the redemption-money shall be paid. From analogy to the redemption of unseated lands, and for the sake of official records, we would suppose the treasurer would be the proper party to be paid; but it does not lie in Davis's mouth to complain that the money was tendered to himself. To extricate the title from all doubt, it was Journeay's interest to pay the money to the treasurer, that his books might show the redemption, and this is our reason for intimating that that was the proper place of payment; but we hold that Davis has no right to complain of the irregularity, and that, as to him, it was a good redemption, which would have defeated his title even if the statutory notice had been given.

The judgment is affirmed.