JOHN KRAHENBUHL, JR., and ADOLPH KRAHENBUHL v. GEORGE H. CLAY and GRACE L. CLAY, his wife, Appellants.—139 S. W. (2d) 970.

Division One, May 7, 1940.*

*NOTE: Opinion filed at September Term, 1939, March 6, 1940; motion for rehearing filed; motion overruled at May Term, 1940, May 7, 1940.

112

*Howell & Jacobs, Chas. L. Townsdin* and *Scott R. Timmons* for appellants.

*Harvey E. Hartz* and *Dwight M. Smith* for respondents.

114

DALTON, C.—This is a suit in equity to quiet and determine title to a lot in Leed's Addition in Kansas City, Missouri. Defendants

claim title under certain tax deeds, and plaintiffs seek to have these deeds declared void and to remove the same as a cloud on plaintiffs' title. The trial court found for plaintiffs. A motion for a new trial was filed and overruled and defendants have appealed. For convenience we shall refer to the parties as plaintiffs and defendants.

The facts leading up to the filing of the second amended petition, upon which the cause was tried, are as follows: On November 18, 1930, the city treasurer of Kansas City, Missouri, offered said lot for sale for certain delinquent city taxes for said year, and, there being no purchasers for said lot, offering to pay the amount of said taxes, the said lot was bid in by the commissioner of accounts of Kansas City, Missouri, on behalf of said city. On January 31, 1931, a certificate of purchase for said lot was issued by said city treasurer to Kansas City and delivered to said commissioner of accounts. On December 15, 1936, and after the lapse of five years from the date of said sale, the property being unredeemed, the defendant George H. Clay paid to the city treasurer an amount equal to the amount of said taxes, interest and costs, secured an assignment of said certificate of purchase from said commissioner of accounts, paid certain delinquent taxes, and, on the following day, applied to and secured from the city treasurer of Kansas City, Missouri, a deed to said lot, and promptly recorded said deed. Thereafter, on February 10, 1937, the plaintiffs for a consideration of $300 obtained a quitclaim deed to said lot from the heirs of J. H. Lipscombs, deceased, the record owner of said lot at the time of said tax sale. This deed was recorded February 25, 1937. On March 1, 1937, plaintiffs, by their attorneys, advised said defendant Clay that they wanted to redeem said lot from tax deed. They requested the amount of defendants' claim. Receiving no reply, plaintiffs, on March 9, 1937, advised said defendant that they had determined the amount of taxes paid and were ready to tender the amount of said taxes, penalties, interest and costs, in order to redeem the property for the owner. Defendant was requested to verify the figures. Defendant made no reply. Plaintiffs thereupon tendered the amount of taxes, interest, penalties and costs paid out by defendant. The tender was refused. Thereafter, on March 30, 1937, the plaintiffs instituted the present suit against said defendant and his said wife, and deposited said amount with the circuit clerk for the use and benefit of defendants.

The original petition filed in this cause contained a count to quiet and determine title and a count in ejectment. In the quiet title count plaintiff charged that said certificate of purchase and said tax deed to defendant, George H. Clay, were void for numerous reasons therein set forth, including the fact that said instruments did not contain any affirmative recitals to the effect that the property was sold by virtue and authority of certain ordinances of Kansas City, Missouri.

Plaintiffs charged that the said instruments did not recite the conditions precedent to the right and authority of said Kansas City to purchase said real estate at said tax sale, did not show that the property could not be sold at the tax sale for the amount of taxes, penalties and costs, did not show that there were no purchasers for the property, willing to pay the amount of the taxes, and did not mention the fact that said property was sold for both general city taxes, assessed under one ordinance, and special park and boulevard maintenance taxes, assessed under another ordinance, or even that special taxes were involved.

Plaintiffs alleged the tender, as aforesaid, and further stated: ''That notwithstanding the premises, plaintiffs do now in this Court tender to the defendant, George H. Clay, whatever sum or sums he may have expended in acquiring the tax deed aforesaid to the said property and any expenditures he may have made for any other or separate taxes, special assessments, etc., and due upon said property, and any and all reasonable and necessary expenditures incident to acquiring said deed, and plaintiffs now bring said moneys so tendered to defendant, George H. Clay, into this Court and pay same to the Clerk of this Court, and do now pay the Clerk of this Court for the use of the defendant, George H. Clay, a sufficient amount to pay the defendant the amount paid at said tax sale for said real property, also the amounts of all taxes, State, County, Municipal, general or special, paid out by said defendant, George H. Clay, on said property with interest thereon at the rate of twelve per cent per annum from the date or dates of such payments; that plaintiffs here offer to keep and make good said tender in this Court at all times, to the end that these plaintiffs may do full equity in the premises to the defendant, George H. Clay, incident to the relief prayed for.'' These allegations were repeated in subsequent amended petitions.

Defendants filed a joint answer alleging that George H. Clay was the owner in fee simple of the real estate described; that defendant Grace L. Clay was his wife and claimed a marital interest in the property and further alleged that improvements had been made upon the property. Plaintiffs thereafter filed an amended petition in said cause and defendants filed a second amended joint answer thereto. Thereafter, on July 30, 1937, and while said suit was pending, defendants caused a new certificate of purchase to be issued by the said city treasurer of Kansas City, in correction of the original certificate, and had the same assigned by the commissioner of accounts to defendant, George H. Clay. They then had a new and amended tax deed issued in correction of the original tax deed. The said officers were serving subsequent terms when said new certificate was issued and assigned, and the new deed was made. After these new instruments had been executed and recorded, the plaintiffs, on September

15, 1937, filed a second amended petition upon which the cause was tried.

This appeal presents no issues with reference to the pleadings. It is sufficient to say that by the second amended petition plaintiffs seek, in equity, to quiet and determine title tó said lot, to have the certificates of purchase and the tax deeds cancelled, and the cloud on plaintiffs' title removed.

Defendants admit that George H. Clay claims to be the owner of the said lot; that his wife has a marital interest therein; that they claim title under the original and amended certificates of purchase and tax deeds; and allege that the property was not redeemed in accordance with certain provisions of the ordinances of Kansas City prior to the issuance of the new tax deed. They also claim certain improvements have been made upon the property. Defendants seek to have George H. Clay declared to be the owner in fee simple of said lot and, if title be not secured, that a lien be given for all taxes, penalties, interest, and costs paid and for the value of improvements.

The pleadings upon which the cause was tried and the exhibits attached thereto cover more than 100 pages of the abstract of the record. Abandoned pleadings and exhibits attached cover an additional 70 pages.

The trial court found all issues for plaintiffs; declared both the original and amended certificates of purchase and original and amended tax deeds were invalid, null, void and of no effect; declared that said instruments constituted clouds upon plaintiffs' title; found that defendants had no right, title or interest in the property; that no improvements had been made thereon which enhanced the value of the property; required that a small additional amount be paid into court for defendants' benefit, so that the total would cover the entire amount of taxes, penalties, interest and costs; and ordered defendants to deliver possession of the property.

There is little conflict in the evidence, much of which is documentary. It includes the original and amended certificates of purchase, the original and amended city tax deeds, the abandoned pleadings and exhibits attached thereto, the records of Kansas City with reference to the assessment of the property for taxation, the levying of the general city taxes and the special park and boulevard maintenance taxes for 1930, the ordinances with reference thereto, the records of the city with reference to the delinquency of said taxes and notice thereof, the sale of the property for delinquent taxes and notice thereof, the time for redemption and notice thereof, proof of publication of the various notices, various provisions of the city charter and ordinances thereunder.

It is sufficient to say that all proceedings with reference to the assessment of this lot for taxation, the amount of the tax and its delinquency, and the sale of the property for said taxes were regular

in all respects up to and including the record of the sale thereof in the office of the city treasurer, by the stamping of the words, "Kansas City, Missouri" on the sales book at the description of the said property and under the heading "To whom sold," and the date of the sale. The testimony showed that such record meant that there were no purchasers for said property at said sale and that the commissioner of accounts bid the property in for the city.

With reference to sales to the city, section 376 of the City Charter of Kansas City (1926) provides: ". . . In case there are no purchasers at any tax sale for any particular lot or parcel, said property may be sold to the city, and such sale may be evidenced either by certificates of purchase in the manner provided for other purchases at such sale or merely by an entry on the tax book. . . ."

Section 1009 of the Ordinances of Kansas City (1928) however, provides: "In case there are no purchasers at any tax sale for any particular lot or parcel, said property may be bid in by the Commissioner of Accounts and sold to the City and such sales shall be endorsed by certificates of purchase in the manner provided for other purchases at such sale. . . . Certificates of Purchase issued to the city may be assigned to any person upon payment to the City Treasurer of a sum of money equal to the amount of all taxes, penalties, interest and costs on such tract or parcel of real property. . . ." Plaintiffs, therefore, contend that such certificates are a necessary record of such sales.

It is conceded that the original certificate of purchase as issued by the city treasurer to the commissioner of accounts was defective and that the original tax deed issued by the city treasurer to defendant, George H. Clay, was void. In their brief defendants state, "Defendants . . . will not contend that the original tax deed was valid. We admit that it was invalid under the decisions of this court in the cases of Voights v. Hart, 285 Mo. 102, 226 S. W. 248, and Hartmann v. Owens, 293 Mo. 508, 240 S. W. 113, . . . our contention . . . will be that said amended certificate and amended tax deed of July 30, 1937, conform in all respects to the holdings of this court. . . . we make no contention that the first tax deed, dated December 16, 1936, although in the form set out in Ordinance No. 1019, was valid. . . . We contend that the amended certificate and amended tax deed follow" the decisions of this court. We, therefore, assume, but do not decide, that the original certificate of purchase was defective and insufficient, and that the original city tax deed as issued to defendant, George H. Clay, was void.

The chief question on this appeal is whether or not the property was redeemed from the tax sale and prior to the execution of the new and amended city tax deed. This requires a consideration of certain provisions of the Ordinances of Kansas City.

Section 1013 provides: "Real property sold under the provisions of this Article, including any real property bid off by the city, or any interest in such real property, may be redeemed by the owner, or his agent or attorney, at any time within five years from the first day on which the annual tax sale began, *or at any time before the execution and delivery of the tax deed to the purchaser at the tax sale, his heirs or assigns, by the payment to the City Treasurer of the amount for which such real property was sold,* together with the interest thereon, . . . together with . . . all other taxes . . . paid by the purchaser, . . . together with interest thereon . . ." (Italics ours.)

Section 1014 provides: "The Commissioner of Accounts shall upon application of any person wishing to redeem any real property sold for taxes under the provisions of the Charter or any ordinance of Kansas City give to such person a statement setting forth the amount required to redeem each tract or parcel of real property described in such statement. Upon filing such statement with the City Treasurer and paying to such Treasurer the amount therein named, it shall be the duty of the City Treasurer to give such person duplicate certificates of redemption therefor. . . ."

Section 1015 provides: "All moneys received by the City Treasurer for the redemption of real property shall at once be paid into the city treasury to be paid out to the purchaser of such real property, his heirs, or assigns, on the delivery of the certificate of purchase to the Commissioner of Accounts . . ."

Section 1018 provides: "If any real property sold for taxes under the provisions hereof shall not be redeemed within five years from the day on which the annual tax sale began at which it was sold, or before the execution and delivery of tax deed, it shall be the duty of the City Treasurer, on presentation to him of the certificate of purchase, to execute in the name of Kansas City, under his hand and the seal of Kansas City, to the purchaser, his heirs, or assigns a deed of the real property described in such certificate of purchase, remaining unredeemed, as shown by the records of his office . . ."

Section 1024 provides: "Unless the holders or owners of certificates of purchase for real estate purchased at any tax sale under this article, take out deed or deeds, as permitted or contemplated by this article, within two years from and after the time for redemption expires, the said certificates or deeds and the sales on which they are based shall, from and after the expiration of such two years, be absolutely null, and shall constitute no basis of title, and shall cease to be a cloud on the title to the real estate to which such certificates refer."

Plaintiffs admit, and the evidence establishes, that at no time prior to the issuance of either the original city tax deed or the new and amended city tax deed did the plaintiffs or any one for them or on their behalf pay any sum to the city treasurer to redeem this particu-

lar property, nor did they make any effort to redeem said property in the particular manner and form provided by section 1013 of said ordinances.

Appellants (defendants) contend that the new tax deed merely recites the true facts with reference to the sale, the issuance of a certificate of purchase and its assignment; that the new tax deed was issued within the time provided by the charter and ordinances, to-wit, within two years after the five-year redemption period; and before any redemption by payment to the city treasurer; that the power to execute certificates of purchase and tax deeds pertains to. the office and that amended instruments may be executed by the proper officer during a subsequent term; that the right, form and manner of redemption from a tax sale is expressly covered by the city ordinances, and is exclusive; that the amended certificate of purchase and amended tax deed are correct in form and substance and, having been issued before any redemption as provided by the terms of said ordinances, the plaintiffs cannot recover.

Respondents contend that the new certificate of purchase and new tax deed are void because neither instrument recites the authority of the city treasurer to make the tax sale or execute the tax deed; that, redemption having been made, by tender to defendants, the amended certificate of purchase and new tax deed were issued without any authority for the issuance of such amended instruments; that they were issued after the expiration of the term of the office of the officer executing the original instruments; that the method of redemption provided by said ordinances applies only when no tax deed of any kind has been issued; and that the redemption money, having been tendered to defendants and refused by them, could properly be deposited with the clerk of the court for the benefit of defendants.

In view of the issues presented, and the view we take of this case, it is unnecessary for us to determine whether the new and amended certificate of purchase and the new city tax deed are correct in form and recitals. It is unnecessary to determine whether, except for the facts of this case, the city treasurer might properly execute a new certificate or a new tax deed in proper form, reciting the true facts with reference to the sale of the property for delinquent taxes, or whether he could issue, and the commissioner of accounts assign, a new certificate of purchase. It is unnecessary to determine whether such new or amended instruments could be issued by such officer during his succeeding term. The essential issue for our consideration is, whether under the facts of this case, the said lot was redeemed from the tax sale prior to the issuance of the new tax deed purporting to convey the property to appellants. The determination of the question of redemption depends on whether the method of redemption, as provided by said ordinances, prior to the issuance of a valid tax deed, was the sole and only method by which a redemption of the

property from said tax sale could be effected by the owner thereof, or whether said ordinances were substantially complied with.

The provisions of said ordinances with reference to redemption are clearly for the benefit of the owner desiring to redeem his property from a tax sale. They relieve him from the necessity of seeking out the purchaser or his assignee. They relieve him from determining, at his peril, the true owner and holder of the tax certificate. They provide a method for determination of the amount due the holder of the certificate of purchase, and provide a means by which the amounts so determined may be paid over for the benefit of the certificate holder. These sections further provide a method for clearing up the title after the redemption, and provide a means to prevent the further clouding of the owner's title by the subsequent or inadvertent issuance by the city treasurer of tax deeds to the property subsequent to a redemption. Appellants insist, however, that said ordinances provide the exclusive and only method by which an owner may redeem his property from tax sales and that unless such method is strictly followed, and prior to the issuance of a valid tax deed to the purchaser or his assigns, that there can be no recovery of the property by the said owner.

In this case the original certificate of purchase and original city tax deed had been executed and delivered to defendant George H. Clay. The instruments were of record and the defendants were claiming thereunder. The defendants were in possession of the property and had refused an actual tender in cash of the amount of all taxes paid, together with penalties, interest and costs. The timeliness of said tender, and the sufficiency of the amount thereof, is admitted. No valid tax deed had then been made. This suit had been instituted by the plaintiffs to have the original certificate and original tax deed cancelled and declared void. The defendants were then in court defending said suit and claiming the title to said real estate under said original tax deed. Apparently both the city treasurer and defendants then considered that a valid tax deed had been made and defendants were proceeding on that theory. The amount of said taxes, penalties, interest and costs, as paid out by defendants, had, at said date, been paid into court by the plaintiffs for the use and benefit of said defendants and the tender maintained. Under such circumstances, it was unnecessary and wholly useless to attempt to proceed under the provisions of said ordinances with reference to the redemption of property prior to the issuance of a tax deed. Under such circumstances, we think it would be highly inequitable to permit defendants to now say that, since no valid tax deed had been made, the plaintiffs should have attempted to proceed strictly under the terms of section 1013 of said ordinances to redeem the property, rather than to have made the tender directly to defendant, George H. Clay. We hold that, under the foregoing facts, in equity, there was

a valid redemption of the property from said tax sale prior to the issuance of any new or amended tax deed to defendants. The defendants could 'obtain no advantage by thereafter applying to the city treasurer and securing a new certificate of purchase or by having the new certificate assigned to defendants by the commissioner of accounts or by presenting said new certificate to the city treasurer and having a new tax deed issued to them after such redemption. The right of the defendants to apply for and secure a valid tax deed had been cut off by the redemption, sufficient in equity, and the amended certificate of purchase, and the new tax deed conferred no new or additional rights. [61 C. J. 1250, sec. 1700; Stockand v. Hall, 54 Wash. 106, 102 Pac. 1037; Sharum v. Berd, 96 Okla. 30, 220 Pac. 478.] Defendants were not thereafter entitled to a valid tax deed and the authority for the issuance of such a deed was wanting. The tender directly to defendants was, under the facts aforesaid, a sufficient compliance with the redemption ordinance.

In 61 C. J. 1276, sec. 1761, the rule is stated as follows: "The redemption money should generally be paid to the holder of the tax title at the time of the redemption . . . Payment to the tax collector or clerk instead of the purchaser or holder of the tax certificate is not sufficient in the absence of statutory authorization therefor . . . Although there is authority to the contrary, it is held that, even where the statute specifically designates a public officer as the person to receive the money, yet a tender or payment to the purchaser himself will be a sufficient compliance with the law, at least in equity." [See also Black on Tax Titles (2 Ed.), sec. 357.]

In 26 R. C. L. 428, sec. 385, the rule is stated as follows: "Redemption is ordinarily effected by paying or tendering to the purchaser the amount of the tax with interest and all intervening costs and charges. . . . In many states the difficulty in finding the purchaser in order to make him a tender . . . has led the Legislature to provide that redemption might be made by payment to the collector, and that that officer should state to a person desirous of redeeming his property the amount due. The amount so paid is then turned over to the holder of the tax title. . . . The effect of payment or tender by the owner of the amount due to the purchaser or his legal representatives or assigns is to defeat the estate of the purchaser and to leave the title and right to possession where there would have been if the sale for taxes had never taken place."

The case of Ruddy v. Woodbridge, 47 N. J. Law, 142, was brought to set aside a sale of land for unpaid taxes. A tax certificate had been issued to a purchaser, which certificate would be cancelled, if the owner, within two years, appeared before the township committee, and deposited with them, for the purchaser, the amount paid with interest. This sum in turn was to be paid, on demand, to the certificate holder. The owner sought out and found the purchaser and

tendered to him the proper sum within the two years. The court held that the provisions for deposit with the township committee were for the benefit of the owner of the land, "to provide him with a place at which he might deposit the money," and that the tender to the purchaser was a sufficient compliance with the law, since "statutory provisions for redemption of land from tax sales are to be construed liberally."

In the case of Broughton v. Journeay, 51 Pa. 31, under a statute where the owner had a year within which to redeem lands sold for taxes, by paying the taxes, interest and costs to the county treasurer for the benefit of the purchaser, the court held that a tender of the proper amount to the purchaser within the time was a valid redemption, and that the purchaser could not complain of any irregularity; although, to extricate the title from all doubt it was to the purchaser's interest to pay the money to the county treasurer that his books might show the redemption.

In the case of Harter v. Cone, 59 Ore. 43, 115 Pac. 1070, 1072, where a statute provided that real property sold for taxes might be redeemed at any time before issuance of a tax deed, it was held that the authority of the sheriff to execute a tax deed was wanting after the tender of a sufficient amount had been made to the purchaser at the tax sale. The court said: "The law should be construed liberally in favor of allowing the true owner of land to redeem from such tax sales. . . . Although the money was not paid or tendered to the tax collector, we think when it was tendered to, and afterwards paid into court for the benefit of, defendant, there was a substantial compliance with the statute. . . . It would seem that one tender of the amount should be sufficient, and that the defendant could not under the law support his title with such tax deeds after the commencement of the action, and that the deeds were ineffectual to convey title."

We think the above cases state the better rule. For cases following a stricter rule see: Gibson v. Pekarek, 126 N. W. 597, 601, 25 S. W. 281, 291, Ann. Cas. 1912B, 944 (aff. 131 N. W. 728, 730, 27 S. D. 423).

Appellants assign error on the trial court's failure to tax costs against plaintiffs and further insist that plaintiffs may not recover because of section 1020 of said ordinances of Kansas City. Said section provides that in any suit or proceedings involving or in any manner calling in question the title or right of the grantee in a tax deed, or in the real estate conveyed or purporting to be conveyed by a tax deed, executed substantially as provided in the preceding section, that the person claiming adversely to the tax title must prove, (1) that the taxes were paid before the sale, or (2) that the property was not subject to taxation or (3) that it had been redeemed "or the tender of the redemption money had been made to the city treasurer before the execution and delivery of the deed, in

accordance with the provisions of this article and that such redemption was had or attempted to be had for the use and benefit of the person having the right of redemption.'' Said section further provides that in the event any person claiming under such tax deed shall be defeated the successful claimant shall be adjudged to pay such person the amount of all taxes, interest penalties and costs paid together with costs of tax deed and recording· fees and ''also the costs of all improvements made thereon, and all costs in the case.'' Said section has no application here. The new and amended tax deed was obtained by appellants after the real estate had been redeemed from the tax sale. Appellants had full knowledge of the tender, redemption and pending suit, and were defending this suit for the determination of title when the new deed was obtained. The deed was void for lack of authority to make it subsequent to said redemption. The right to costs herein was not affected by said new deed. Defendants were not claiming under the new tax deed when this suit was instituted. We hold that said section does not apply where the tax deed was obtained with a full knowledge of all facts and subsequent to the institution of a suit calling in question the tax title of defendants. [See Voights v. Hart, 285 Mo. 102, 117, 226 S. W. 248.] The trial court properly taxed costs against the defendants. [Newton v. Olson-Schmidt Construction Co. (Mo.), 248 S. W. 929, 930 (3) ; Sec. 1242, R. S. 1929 (Mo. Stat. Ann., sec. 1242, p. 1468).]

▮ Error is assigned on the court's failure to allow to defendants the total *costs* of all improvements on said lot, including the cost of a fence about the same. It is insisted that the amended deed is valid on its face, and if plaintiffs are permitted to recover, that section 1020 of said ordinances applies and defendants are entitled to the *costs* of all improvements. We have held that said section has no application here. In addition, said improvements were not made in reliance upon the amended tax deed. Defendants had pleaded the making of said improvements prior to obtaining the new tax deed. Defendants alleged that the improvements upon the real estate ''cost and are of the reasonable value of $1,453.12.'' The prayer of the answer is that, if defendant Clay does not secure a title, he be allowed ''the *value* of the improvements he has placed upon said real estate.'' (Italics ours.)

The trial court found: ''The defendants have placed no improvements on said property, which in any manner enhanced the value of said property and that the fence which the defendants have placed for their own convenience on said property and to which plaintiffs in open court make no claim is now surrendered to the defendants and the defendants are entitled to remove same from said premises.'' Subsequent to the appeal in this cause defendants removed said fence and in their reply brief state, ''Respondents' statement that the fence has been removed is true because the trial court told us to

remove it." Having voluntarily removed said fence in accordance with the terms of said decree, pending a final determination of said cause, defendants cannot complain of the decree, insofar as the same applies to said fence. That matter has become moot, and defendants may not insist here on the recovery of the cost of the fence.

Respondents have moved to dismiss this appeal because of the admission that the fence has been removed. The motion is based on the theory that appellants have acquiesced in the judgment of the trial court. The motion is overruled, but, in view of the admitted facts, we will not review the action of the trial court in making no allowance for said fence.

With reference to the other improvements the evidence tends to show that the lot in question was located across the street from a foundry operated by defendant George H. Clay; that the lot was low, wet and soft, was 12 to 18 inches lower than the level of abutting improved streets, and that water frequently stood upon it; that large amounts of refuse collected at defendants' foundry; that said defendant frequently purchased lots and gulleys and filled them with such refuse; that when this lot was purchased defendant had on hand large quantities of refuse; that, on purchasing the lot, defendant provided tile drainage, and then covered the entire lot to a depth of 22 inches with dirt, sledge, sand and cinders from the foundry; that he surrounded the lot with a fence made of steel posts, wire and sheet metal; that the cost of the labor in filling in the lot and building the fence, the value of the use of trucks, and the cost of materials for the fence, amounted to $1453.10; and that no charge was made for the said cinders and refuse. The labor in draining and filling in the lot is not separated from the labor in building the fence. There was evidence that the filling of the lot constituted no improvement and that the fence was only beneficial for defendants' use. There was no evidence as to any increase in the market value of the lot by reason of the improvements, or as to the value of the improvements.

The right of defendants to recover for improvements is a proper matter for the court's consideration. [Rains v. Moulder, 338 Mo. 275, 90 S. W. (2d) 81; Hill v. Ballard (Mo.), 178 S. W. 445.] Defendants are entitled to receive compensation for the value, if any, of the improvements placed upon the land in good faith while it was in their possession. [Boatmen's Savings Bank v. Grewe, 101 Mo. 625, 14 S. W. 708.] The true measure of defendants' recovery is not the cost of making the improvements or their particular value to defendants, but the value of the improvements as measured by the enhancement in the value of the land to the true owner thereof. [Boatmen's Savings Bank v. Grewe, supra; Sires v. Clark, 132 Mo. App. 537, 538, 112 S. W. 526; Anderson v. Sutton, 301 Mo. 50, 61, 254 S. W. 854, 857; 61 C. J. 1471, sec. 2083; 61 C. J. 1474, sec. 2085; 9 R. C. L. 952, 953, secs. 123, 124.]

Considering all of the facts and circumstances in the record, however, we defer to the finding of the trial court, and hold that under the evidence the said improvements did not enhance the value of the property and that defendants may not recover therefor. The assignment of error based upon the failure to allow for improvements must be overruled.

Other assignments of error not being mentioned under points and authorities or in argument will be considered as abandoned.

The judgment is affirmed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.

---

*NOTE: Opinion filed at September Term, 1939, March 6, 1940; motion for rehearing filed; motion overruled at May Term, 1940, May 7, 1940.